UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS TORRES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAN FRANCISCO HUMAN SERVICES AGENCY, et al.,<br><br>　　　　　Defendants. | Case No. 4:18-cv-07415-KAW<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; ORDER DISCHARGING ORDER TO SHOW CAUSE**<br><br>Re: Dkt. No. 34 |

On August 30, 2019, Defendants City and County of San Francisco and Trent Rhorer filed a motion for to dismiss Plaintiff Jesus Torres's first amended complaint.

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, GRANTS Defendants' motion to dismiss with prejudice, because any amendment would be futile.

## I. BACKGROUND

On August 17, 2017, Plaintiff Jesus Torres, proceeding pro se, filed the instant suit against "San Francisco Human Services Agency," which is a department of the City and County of San Francisco, and Trent Rhorer in his official capacity in San Francisco Superior Court. Defendants were served on November 8, 2018, and subsequently removed the case to federal court.

On August 12, 2019, Plaintiff filed the first amended complaint. (First Am. Compl., Dkt. No. 33.) Therein, Plaintiff alleges that the benefits that he was receiving through the County Adult Assistance Program ("CAAP program")—a workforce program for low-income San Franciscans—were improperly terminated. The Department of Human Services ("DHS") administers the CAAP program on behalf of the City, providing financial assistance and social services to indigent adults through programs, such as Personal Assistance Employment Services

("PAES"). (*See* FAC ¶ 7.) Plaintiff received a notice, dated September 13, 2016, that his PAES benefits would be terminated on or around September 30, 2016 for failure to submit his CAAP Monthly Earned Income and Asset Report. (FAC ¶ 7; 9/13 Notice, FAC, Ex. A.) The notice informed Plaintiff that if he did not submit that form by the 18th day of the month his benefits would be delayed and that if he did not submit by "the first work day of next month" his benefits would be discontinued effective September 30, 2016. (9/13 Notice at 1.) The notice also gave Plaintiff an option to request a due process hearing if he believed the action to discontinue benefits for failure to provide the completed reports was wrong. (9/13 Notice at 1.)

Previously, on August 30, 2016, Plaintiff had requested a hearing to contest his discontinuation on the grounds that he had "failed" his "employability appt.," which was scheduled for September 22, 2016. (*See* FAC ¶ 8, 9/1 Notice, FAC, Ex. B.) The notice confirming the hearing date advised Plaintiff that the "failure to appear or to check-in on time or to respond when security calls you will result in a decision in favor of the County." (9/1 Notice at 1.)

On September 22, 2016, Plaintiff's social worker told him to sign two forms—one scheduling an appointment on September 29, 2016 to submit his monthly income reports, and the other titled "PAES Participant Agreement," which resolved the issue that was set for hearing on that same date. (FAC ¶ 8; FAC, Exs. C-D.)

Plaintiff did not appear at the appointment scheduled for September 29, 2016 to submit the monthly income reports, because he was experiencing acute lower back pain and could not travel. (FAC ¶ 11.) Plaintiff did not receive another notice stating that his benefits would be discontinued effective October 1, 2016. (FAC ¶ 12.) Plaintiff did not receive his benefits on October 1, 2016 as expected. (FAC ¶ 13.)

Plaintiff was issued another notice on October 13, 2016, which warned that his assistance would be discontinued if he did not submit his Earned Income and Asset Report form. (FAC ¶¶ 13-14; 10/13 Notice, FAC, Ex. H.) That notice informed Plaintiff that he had until October 18, 2016 to submit the report without a lapse in benefits, but that if he submitted the form before the first day of the month that he would continue to receive benefits, but that payment would be delayed. (10/13 Notice at 1.) Plaintiff alleges that this notice made him "believe he had a chance to

2

recover his benefits," and he submitted the required form on October 20, 2016. (FAC ¶ 15.) Despite allegedly submitting the form, Plaintiff's benefits were terminated. *Id.*

Plaintiff requested a fair hearing to contest the discontinuance of his benefits, but cancelled the hearing on October 21, 2016. (FAC ¶ 15.) On October 31, 2016, Plaintiff went to HSA and obtained assistance in filling out another request for a fair hearing. (FAC ¶¶ 15-16; FAC, Ex. I.)

On November 3, 2016, the County denied Plaintiff's request for another hearing on the grounds that he had a hearing scheduled on October 24, 2016, but that he had contacted the office on October 21, 2016 to withdraw that request, so he was no longer contesting the County's proposed termination action effective September 30, 2016. (FAC ¶ 17; 11/3 Notice, FAC, Ex. J.) Additionally, that notice clarified that the recent discontinuance action was not for a new issue, but was "only putting into effect the **originally** proposed discontinuance action that had been suspended while the Fair Hearing process ran its course." (11/3 Notice at 1)(emphasis in original.)

Plaintiff's benefits were restored as of February 3, 2017. (Dkt. No. 24 at 3.)

Plaintiff's first amended complaint alleges two causes of action: (1) a violation of Plaintiff's due process rights under the Fourteenth Amendments pursuant to 42 U.S.C. § 1983; and (2) a *Monell* claim under § 1983.

On August 30, 2019, Defendants filed a motion to dismiss. (Defs.' Mot., Dkt. No. 34.) Plaintiff did not file a timely opposition, and on September 27, 2019, the Court issued an order to show cause, in which it ordered Plaintiff to file a response to the order to show cause and an opposition, as separate documents, by October 18, 2019. (Order to Show Cause, Dkt. No. 36 at 1.) On October 18, 2019, Plaintiff filed a response to the order to show cause, which consisted of his opposition, as he did explain why he did not timely file the opposition. (Pl.'s Resp., Dkt. No. 37.) Since Plaintiff is pro se, the Court will consider this document as his opposition. On October 25, 2019, Defendants filed a reply. (Defs.' Reply, Dkt. No. 39.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250

3

F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III. DISCUSSION

In making the motion to dismiss, the Defendants argue that (1) Defendant Rhorer should be dismissed because he is named only in his official capacity; (2) that Plaintiff does not allege a

4

violation under Section 1983; and (3) Plaintiff fails to state a *Monell* claim. Defendants argue that various federal causes of action based on the termination of his CAAP benefits must be dismissed due to his failure to plead sufficient facts in support of these allegations. (Defs.' Mot. at 4-5.)

**A.  Defendant Trent Rhorer is named in his official capacity only.**

As an initial matter, the Court notes that the first amended complaint makes no mention of Defendant Trent Rhorer nor does it make any allegations as to his individual conduct, thereby resulting in him being named exclusively in his official capacity. This is no different than suing the City and County of San Francisco. *See Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985)(citation omitted).

Accordingly, all claims against Mr. Rhorer are dismissed with prejudice, because the City and County of San Francisco is the proper defendant.

**B.  Plaintiff cannot state a claim for due process violations under § 1983.**

Plaintiff's first cause of action alleges Fourteenth Amendment due process violations pursuant to 42 U.S.C. § 1983. (FAC at 7.)

Defendants argue that Plaintiff fails to state a claim under § 1983, because Plaintiff was given both notice and reasons for termination, as well as an opportunity for a fair hearing. (Defs.' Mot. at 6-7.) The Fourteenth Amendment confers due process rights to an impartial administrative hearing prior to the termination of benefits. *See Goldberg v. Kelly*, 397 U.S. 254, 267 (1970). Here, the operative complaint alleges that Plaintiff did not appear at his scheduled appointment, and that nobody followed up with him before his benefits were terminated. (FAC at 7.) The exhibits attached to the first amended complaint demonstrate that Plaintiff was repeatedly warned that his benefits would be discontinued if he did not submit the monthly income and asset reports. (*See* FAC, Exs. A, H.) In his response, Plaintiff concedes that he was provided the opportunity for a hearing, but that he cancelled the scheduled hearing because he was in physical pain. (Pl.'s Resp. at 1-2.) Plaintiff now cites his disability as the reason why he was unable to comply with the program rules. *See ids.* That does not mean that he was not provided the opportunity for a fair hearing or that he was deprived of his right to a hearing because County employees did not affirmatively reach out to him after he cancelled his scheduled hearing. Plaintiff

also appears to believe that an actual hearing was required before his benefits were terminated, rather than the opportunity for a hearing. (*See* FAC at 7.) That is incorrect. The County need only offer a fair hearing prior to termination, which Plaintiff scheduled, but later cancelled. (FAC ¶ 15; 11/3 Notice at 1.)

Accordingly, Plaintiff was afforded the fair hearing process guaranteed by the Fourteen Amendment, and the first cause of action must be dismissed with prejudice.

### C. Plaintiff cannot allege a *Monell* claim under § 1983.

Defendants move to dismiss the *Monell* claim on the grounds that Plaintiff does not plead sufficient facts to state a claim. (Defs.' Mot. at 7.) A municipality or governmental entity cannot be found liable under 42 U.S.C. § 1983 on a theory of respondeat superior. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691 (1978). Rather, in order to hold a municipality liable for a municipal employee's conduct under *Monell*, a plaintiff must show that (1) that the plaintiff "possessed a constitutional right of which [he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and, (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks omitted). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

The second cause of action alleges that HSA acted under color of law when it terminated Plaintiff's benefits, thereby making the County liable under *Monell*. (FAC at 8.) Defendants contend that Plaintiff does not allege that his rights were violated pursuant to a policy or custom, and that he has not "alleged that an individual with policymaking authority committed the constitutional violation or that the decision was ratified." (Defs.' Mot. at 8.) The Court agrees. In fact, as discussed above, Plaintiff cannot sufficiently allege that he has suffered a deprivation of his rights, because he was afforded a hearing process that comports with the Fourteenth Amendment. *See* discussion, *supra,* Part III.B.

Accordingly, since Plaintiff cannot state a claim for an underlying constitutional violation, he cannot possibly allege a viable *Monell* claim, thereby requiring that the second cause of action be dismissed with prejudice.

### D. September 27, 2019 Order to Show Cause is Discharged

Plaintiff failed to file an opposition by the deadline, so, on September 27, 2019, the Court issued an order to show cause. (Order to Show Cause at 1.) Therein, Plaintiff was advised that "[t]he failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute consent to the granting of the motion." *Id.* He was then ordered to "1) to file an opposition or statement of non-opposition to the pending motion, and 2) to file a response to this order to show cause explaining why the opposition was not timely filed." *Id.* Plaintiff did not file both documents. Instead, he filed one document titled "Response to Order to Show Cause," which the undersigned has construed as his opposition to the motion to dismiss, but he did not explain why he did not timely file his opposition.

Regardless, the Court DISCHARGES the September 27, 2019 order to show cause.

### IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss Plaintiff's first amended complaint in full and without leave to amend, because any amendment would be futile.

Additionally, the Court DISCHARGES the September 27, 2019 order to show cause.

The Clerk is ordered to close the case.

IT IS SO ORDERED.

Dated: December 6, 2019

KANDIS A. WESTMORE
United States Magistrate Judge